**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v. CRIMINAL ACTION NO. 2:13-cr-00094

SAMUEL BAILEY JR.,

Defendant.

**MEMORANDUM OPINION AND ORDER**

Shifting theories of Defendant's criminal culpability, inspired by a vaguely drawn indictment that at once charges and does not charge a crime, confound the present posture of this case. A federal indictment should not be a legal ink blot test.

The procedural history of this case leads to the Court to the conclusion that, absent an agreed and *clearly* identified factual basis to support Defendant's guilty plea and a knowing and intelligent waiver of any defects in the indictment, and a convincing representation by Defendant that his guilty plea was knowing and intelligently made, the Court will have no alternative but to reject Defendant's guilty plea.

*I. BACKGROUND*

Nearly one year ago, a federal grand jury returned a one-count indictment against Defendant Samuel Bailey. (ECF 1.) The indictment purports to allege that Defendant, a convicted sex offender subject to the registration requirements of the Sex Offender Registration

and Notification Act ("SORNA"), [42 U.S.C. §§ 16901 *et seq.*], violated SORNA by failing to "register and update" his sex offender registration in violation of 18 U.S.C. § 2250. More particularly, the indictment alleges as follows:

> The Grand Jury Charges:
>
> 1. On February 5, 1979, defendant SAMUEL BAILEY JR., also known as "SAMUEL BAILEY," was convicted in the Supreme Court, Monroe County, New York, of First Degree Rape, in violation of New York Penal Code § 130.35. As a result of the conviction and sentence, defendant SAMUEL BAILEY JR. was required to register as a sex offender under the Sex Offender Registration and Notification Act, 42 U.S.C. § 16901 et seq. ("the Act").
>
> 2. On or about July 13, 2011, defendant SAMUEL BAILEY JR. registered as a sex offender in West Virginia.
>
> 3. In or about September 2012, defendant SAMUEL BAILEY JR. left the last residence that he registered as a sex offender in Charleston, West Virginia and traveled in interstate commerce to Ohio where he resided in and around Columbus, Franklin County, Ohio.
>
> 4. Subsequent to his travel to Ohio, defendant SAMUEL BAILEY JR. was required to update his sex offender registration under the Act, because he was a sex offender as defined by the Act.
>
> 5. From in or about September 2012 through in or about March 2013, at or near Charleston, Kanawha County, West Virginia, and within the Southern District of West Virginia and elsewhere, defendant SAMUEL BAILEY, JR. did knowingly fail to register and update his registration as required by the Sex Offender Registration and Notification Act.
>
> In violation of Title 18, United States Code, Section 2250.

Defendant, by his former attorney, Mary Lou Newberger, then the Federal Public Defender for the Southern District of West Virginia, filed a motion to dismiss the indictment (ECF 18). Defendant's motion challenged venue for this prosecution in the Southern District of West Virginia. Defendant contended that proper venue lay in the Southern District of Ohio because

that was the jurisdiction where Defendant failed to act, that is, where he failed to comply with SORNA's requirements that a sex offender keep his registration current.

The United States responded in opposition to Defendant's motion to dismiss (ECF 19) contending that, pursuant to the general federal venue statute, 18 U.S.C. § 3237(a), venue for this prosecution lay in any district where the crime began, continued, or concluded. (*Id.* at 11–12.) In support of its position, the United States argued that federal courts have "consistently held" that § 3237(a) applies to SORNA cases. (*Id.* at 3.) The United States urged the Court to considered five "well-reasoned" cases in support of the view that venue was proper in the jurisdiction of defendant's departure. (*Id.* at 11.) Of these five cases, the holdings of three are simply that venue is proper under § 3237 in the defendant's departure jurisdiction because that is the state where the offense began. *See United States v. Howell*, 552 F.3d 709, 718 (8th Cir. 2009) (holding "[i]n Howell's situation, the Northern District of Iowa is a proper venue because Howell's SORNA violation commenced in the Northern District of Iowa); *United States v. Young*, 582 F. Supp. 2d 846, 850 (W.D. Tex. 2008) (holding that under § 3237(a), SORNA offenses are continuing offenses and venue is proper in any state in which the defendant has moved; thus, prosecution in the Western District of Texas, the jurisdiction to which Defendant had re-located, was a proper venue); and *United States v. Hinen*, 487 F. Supp.2d 747, 759 (W.D. Va. 2007) (holding that the defendant's failure "to register under SORNA constitutes a continuing offense. . . [and] venue is proper in either Virginia, the state in which the travel originated and where the defendant originally resided, or Tennessee, the place the defendant changed his residency to and failed to register as a sex offender.").

The remaining two cases cited and discussed by the United States held that venue was proper in either the former or current jurisdictions of the defendants' residence. *See United States v. Leach*, 639 F.3d 769, 771–72 (7th Cir. 2011) (stating, without discussion, that "SORNA required Leach to "update" his registration with Indiana authorities when he left the state, *see* [42 U.S.C.] § 16913(c), and register with South Carolina authorities when he established a residence there, *see* § 16913(a)") and *United States v. Thompson*, 595 F. Supp. 2d 143, 148–49 (D. Me. 2009) (holding that venue was proper in Maine, the jurisdiction from which the defendant departed, because Maine was a jurisdiction where he was registered and, thus, was a "jurisdiction involved" within the meaning of 42 U.S.C. § 16913(a) & (c)).

On May 28, 2013, the Court held a hearing on Defendant's motion to dismiss. Defendant argued in support of his position that the offense was not continuing in nature and, thus, venue for the crime was the Southern District of Ohio, the jurisdiction where he failed to register. The Government pressed its position that the offense was a continuing offense under § 3237(a), either because West Virginia was the jurisdiction where Defendant's travel began or because, as in the *Leach* and *Thompson* cases, Defendant had, purportedly, an obligation to notify West Virginia that he had departed the state.

Following argument by counsel, the Court orally denied the motion to dismiss from the bench making specific findings. The Court noted that while Defendant's venue argument had some logical appeal, it went against the weight of authority. The Court referenced two recent, although unpublished, Fourth Circuit cases, *United States v. Atkins*, No 12–4208, 2012 WL 5992213 (4th Cir. Dec. 3, 2012) (holding that Atkins' offense "commenced when he moved from North Carolina, which gave rise to his obligation to register in Maryland, and was completed when

he failed to register in Maryland. 42 U.S.C. § 16913(c) (2006)") and *United States v. Stewart*, Nos. 11–4420, 11–4471, 2012 WL 130746 (4th Cir. Jan. 18, 2012) (holding "[b]ecause Stewart's offense began when he moved from the Western District of Virginia, thereafter failing to register in Kentucky, venue was proper in the Western District of Virginia."). As in *Atkins* and *Stewart*, the Court's denial of Defendant's motion to dismiss was predicated on the principle that Defendant's offense began when he moved from West Virginia to Ohio and, thus, under § 3237(a) venue was proper. Importantly, the Court's ruling was *not* based on the notion that venue was proper because Defendant had a duty to update or notify *West Virginia* that he had left the state. Thereafter, Defendant entered into a conditional plea agreement and pleaded guilty to the single count indictment alleging a violation of 18 U.S.C. § 2250.[1]

On January 23 and 30, 2014, the Court began and halted the sentencing and supervised release revocation hearings in this case. At the January 23 hearing, the Government appeared to take the position that Defendant's crime did not occur in Ohio, but rather in West Virginia.[2] The

[1] Defendant's conditional plea agreement was negotiated by Defendant's former attorney, Mary Lou Newberger. The plea agreement permits Defendant to appeal the Court's denial of his motion to dismiss. If his appeal is successful, the agreement permits Defendant to withdraw his plea and the plea agreement will be void.

2 At the January 23, 2014, hearing, the following exchange occurred between the Court and the Assistant United States Attorney:

> THE COURT: . . . [M]y question for you is, what's he charged with here? . . . [I]s he charged with SORNA for failure to register in Ohio or West Virginia?
>
> AUSA GOES: He's charged for failing to update. The way it's worded is he didn't update his registration here while he was in Ohio and I'm getting the exact -- I was reaching for the exact copy of the indictment, but we can prosecute it.
>
> * * *
>
> THE COURT: Well, I – I'm glad I read that more closely. All right. Well, go ahead. I needed to take a look at this because my understanding is, this case has been that he was charged with failing to register in Ohio, but now that I've looked at the indictment, Ms. Purdy is right. It appears he's been charged with failing to update in West Virginia.

Court expressed its concern about confusion over the factual basis for Defendant's guilty plea and the charging language of the indictment. The Court continued the sentencing and revocation hearings to consider these issues.

On January 30, 2014, the hearings reconvened. The Court expressed its concern that, rather than charge that Defendant had an obligation to notify the Ohio authorities of his change in address, the indictment appeared to charge that Defendant's failure to comply with SORNA was that he had failed to notify West Virginia authorities of his change in residence after he had relocated to Ohio. The Court reviewed 42 U.S.C. § 16913 with counsel and questioned how, under the plain language of that statute, Defendant, whose residence was then in Ohio, had any obligation to notify West Virginia of anything. The Court directed the parties to consider this issue, and the question of whether the indictment was defective, and, if so, what possible remedy might exist. The Court directed the parties to file memoranda addressing the Court's concerns and re-scheduled the hearings to the following week.

---

AUSA GOES: That's right. It was charged in the alternative, Your Honor, and that was -- that was –

THE COURT: Well, where is the other alternative? Where is his failure to -- where is the charge of his failure to register in Ohio?

AUSA GOES: Well, the – it's register and update his registration, Your Honor. Maybe that's -- maybe I'm –

THE COURT: It says subsequent to his travel to Ohio, the defendant, Samuel Bailey, Jr., was required to update his sex offender registration under the act because he was a sex offender as defined by the Act, and then it goes on to allege that he, in Charleston, Kanawha County, he failed to register or – and update.

AUSA GOES: That's right.

THE COURT: So he's not being – he's not been charged with failing to register in Ohio in this case. He's been charged with failing to update his registration in West Virginia.

AUSA GOES: Yes, Your Honor.

(Rough Tr., Jan. 30, 2014, hearing at 11–12.)

On February 4, 2014, the United States filed a memorandum stating the indictment was not defective because it tracked the statutory elements of the offense. The United States, consistent with the Assistant United States Attorney's representation at the January 23, 2014, hearing, stated:

> The indictment is charged in the conjunctive to include the requirement to both register and update his registration. *See* 18 U.S.C. § 2250(a). On the facts of the instant case, it is the defendant's failure to update his registration in the S.D.W.V. that forms the salient element of the offense.

(ECF 68 at n.2.) The Government argued:

> The United States['] ability to prosecute a SORNA violation lies in the SDWV jurisdiction for defendant's failure to update his registration in West Virginia. Courts have repeatedly held that SORNA is a "continuing offense," and a failure to register in the new jurisdiction, and failure to update his existing registration in a departed jurisdiction, both constitute a SORNA violation. *See United States v. Howell*, 552 F.3d 709, 717–18 (8th Cir. 2009); *United States v. Thompson*, 595 F. Supp. 2d 143, 148–49 (D. Me. 2009) (holding that venue was proper in either Maine or New Mexico because "when Mr. Thompson traveled in interstate commerce, he failed to update his registration in Maine, the state he left, and failed to register in New Mexico, the state he traveled to"). Because the offense is a continuing offense, a defendant can be prosecuted in either the federal jurisdiction that he leaves and fails to update, or the federal jurisdiction in which he ultimately resides. *Id.*

(ECF 68 at 6.) Because, in the Government's view, the indictment was not defective, the Government contended that there was no need to consider striking surplusage from the indictment.

Defendant filed a brief in response to the Government's memorandum. Defendant stated that he actually committed two SORNA violations: (1) when he traveled from West Virginia to Ohio and did not thereafter register in Ohio; and (2) when he later traveled from Ohio back to West Virginia and did not register or update his registration in West Virginia. Defendant argued that the indictment was defective because it conflates these two separate violations. Defendant noted that the indictment fails to include the element of interstate travel for the second violation (i.e. an

allegation that Defendant traveled in interstate commerce from Ohio to West Virginia), but that he was willing to "waive any potential problems in the indictment and proceed to sentencing." (ECF 69 at 3.) Thus, it appears that Defendant perceives that the indictment—almost—states a SORNA violation based on Defendant's return from Ohio to West Virginia and that any defect in *that* charge will be waived. Defendant further argued that the United States' view that SORNA required him to notify West Virginia authorities of his residency change when he moved to Ohio was erroneous.

In light of some of the confounding positions taken by the parties in their memoranda, the Court once again continued the sentencing hearing.

## *II. DISCUSSION*

For the reasons set forth below, the Court rejects the Government's contention that Defendant was required to notify West Virginia authorities after he departed the state of his new residence in Ohio. That view is not supported by the plain language of 42 U.S.C. § 16913. As discussed below, the two case authorities on which the Government relies in its February 4, 2014, memorandum for that proposition are, in one instance, unpersuasive, and in the other, no longer good authority because that circuit in a subsequent opinion rejected its language as mere dicta.

The Government appears to misapprehend the Court's ruling concerning venue. The Court's ruling was that venue is proper in the Southern District of West Virginia because Defendant's crime *began* in this district when he traveled from West Virginia to Ohio. In addition to not being a federal crime, Defendant's failure to notify West Virginia of his residency change after he left the state is inconsequential to the venue analysis. Because Defendant had no duty under *federal* law to notify West Virginia authorities of his residency change, the

Government's theory of prosecution is flawed.

The Court also rejects Defendant's contention that the indictment, with the exception of alleging the element of interstate travel from Ohio to West Virginia, charges a SORNA violation based on Defendant's failure to update his West Virginia registration after his return to the state in March 2013. There is nothing in the indictment or the stipulation of facts that concerns Defendant's *return* to West Virginia or any information about how long he had been in West Virginia at the time of his arrest. This theory of culpability has plainly never been the Government's and, thus, should not have been the basis of the grand jury's return of a true bill on the indictment.[3]

It is also apparent that it was not the Defendant's understanding of the charge based on the stipulation of facts and the arguments made in support of the pretrial motion that was filed early on in this case. Rather, it is evident that Defendant's version of this crime is a late-breaking and creative effort to revise the history of this case in order to gain a Sentencing Guideline advantage.

As explained below, however, the Court agrees with Defendant that venue for a SORNA violation based on Defendant's failure to notify *Ohio* authorities exists in either this District or the Southern District of Ohio, as the Court has previously ruled.

*A. The Plain Language of 42 U.S.C. § 16913 Imposes No Duty on Defendant to Have Notified West Virginia of His Change in Residence after He Moved to Ohio*

The Court's analysis, of course, must begin with the statutory text. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.*, 511 U.S. 164, 173 (1994). This Court will apply an unambiguous statute by its plain terms. *See Kofa v. U.S. INS*, 60 F.3d 1084, 1088–89 (4th Cir. 1995) (citing *First United Methodist Church v. United States Gypsum Co.*, 882 F.2d 862, 869

3 The Court is left to ponder exactly what evidence and theory *was* presented to the grand jury in this case.

(4th Cir.1989), *Sutton v. United States*, 819 F.2d 1289, 1292 (5th Cir.1987); *The King v. Inhabitants of St. Nicholas*, 4 Neville & Manning 422, 426–27 (Eng. K.B. 1835) (Denman, C.J.) ("[W]here I find the words of a statute perfectly clear I shall adhere to those words, and shall not allow myself to be diverted from them by any supposed consequences of one kind or the other . . . ."), cited in *I Kent's Commentaries*, 467–68, n.d (1836)).

*1. The Statutory Text—42 U.S.C. § 16913*

Under 18 U.S.C. § 2250, Defendant, a convicted sex offender subject to SORNA's registration requirements, is guilty of a felony if he travels in interstate commerce and knowingly fails to register or update a registration under SORNA.

Section 16913 of Title 42 of the United States Code sets forth the registration requirements for sex offenders. Section 16913 contains five sub-sections, the first three of which are pertinent to this analysis.

Section 16913(a) is titled "In general" and states that a sex offender is required to register and keep his registration current in each jurisdiction where he: (1) resides; (2) is an employee; and (3) is a student.

Sub-section (b) and (c) address the specific registration procedures a sex offender must undertake. Subsection (b), which is titled "Initial registration", addresses the initial registration procedure. For initial registration purposes only, under sub-section (b), a sex offender must register in the jurisdiction in which he was convicted *and* the jurisdiction of his residence, if his residence is different from the jurisdiction of his conviction.

Sub-section (c), which is titled "Keeping the registration current", addresses the procedure to be followed when an offender, who has registered, later changes his name, residence,

employment, or student status. This sub-section provides:

> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

As is plain, there is *nothing* in this sub-section that requires a sex offender who has re-located to a new jurisdiction to notify the authorities from the state that he left (unless, of course, if he were to later return to the former jurisdiction and take up residence, attend school, or become an employee). The plain language of § 16913(c) requires Defendant to keep his registration current in "at least one" of three possible places, that is, where he: (1) resides; (2) is an employee; and (3) is a student. After Defendant moved to Ohio and no longer resided in West Virginia, the only jurisdiction that met the requirements of § 16913(c) was Ohio.

*2. United States v. Howell*

In its February 4, 2014, memorandum, as noted above, the United States cited two cases in support of its position that Defendant was required to update his status in West Virginia: (1) *United States v. Howell*, 552 F.3d 709, 717-18 (8th Cir. 2009); and (2) *United States v. Thompson*, 595 F. Supp. 2d 143, 148-49 (D. Me. 2009).[4] The United States offered no analysis of either of these

[4] In fairness, there are a few other cases where courts have stated that the defendant had a duty to notify the jurisdiction of his departure that he had departed, a couple of which the Government cited in its response to the motion to dismiss (*see, e.g., United States v. Leach*, 639 F.3d 769, 771–72 (7th Cir. 2011) (holding without discussion that "SORNA required Leach to update his registration with Indiana when he left the state, see § 16913(c), and register with South Carolina authorities when he established a residence there, see § 16913(a)") and *United States v. Bruffy*, No. 1:10cr77 (LMB), 2010 WL 2640165 at *4 (E.D.Va. June 30, 2010) (stating that Bruffy "clearly violated the statute by failing to correct his location with the Florida authorities when he began residing in Northern Virginia rather than Edgewater, Maryland".). *See* (ECF 19 at 3, 6.). *See also, United States v. Van Buren*, 599 F.3d 170, 174–75 (2d. Cir. 2010). In response to the Court's recent inquiry on this specific issue, however, *Howell* and *Thompson* are the sole cases on which the United States staked its position.

authorities. The Court finds both of these cases unpersuasive for the proposition that Defendant was required under SORNA to notify West Virginia authorities of his move to Ohio.

In *Howell*, the defendant was initially registered in Iowa, later relocated to Texas, and did not notify either jurisdiction of his residency change. Howell was prosecuted in Iowa for a SORNA violation. In this regard, *Howell* is similar to Mr. Bailey's case. The issue, however, that the Eighth Circuit analyzed was *not* whether Howell was required under SORNA to notify the state of his departure of his change of residence, but rather whether Iowa was a proper venue for the prosecution of Howell. Citing 18 U.S.C. § 3237—the statute providing for venue in any state where the offense was committed, commenced, or completed—the Eighth Circuit determined that Iowa was an appropriate venue "because Howell's SORNA violation commenced in the Northern District of Iowa." 552 F.3d at 718. In explaining this holding, the court stated:

> Howell registered in the Northern District of Iowa after he was released from jail, and he traveled from the Northern District of Iowa when he moved his residence to Texas. Further, Howell failed to notify the Texas sex offender registry of his change in residence, *but also failed, as required by law, to notify the Iowa sex offender registry of his move*. Thus, Howell's failure to register his move *and inform Iowa of his new Texas residence* was [sic] a material part of the § 2250 violation, and venue is proper in the Northern District of Iowa.

*Id.* (footnote omitted) (emphases added).

The United States' unexplained reliance on *Howell* for the proposition that Mr. Bailey was required to notify West Virginia authorities of his residency change hinges entirely on these two phrases in the *Howell* opinion. It is unclear to this Court how such dicta are analytically connected with the *Howell* court's actual holding, that is, that venue in Iowa was proper because the offense "commenced" in Iowa. In the three sentences that follow the holding, the court notes, first, that Howell traveled from Iowa to Texas. The court adds that Howell failed to notify both

Texas and Iowa of his residency change and that these omissions were "material" to the SORNA charge. Howell may well have been required, by *state* law, to notify Iowa of his residency change, but this Court is not equipped to know if this is what the Eighth Circuit intended in its dicta. That construction, however, seems unlikely because of the court's statement that Howell's failure to notify Iowa of his new Texas residence (as well as Texas) was material to the SORNA offense.

If *Howell* stands for principle that the SORNA offense is "commenced" with a defendant's departure from the jurisdiction, this Court agrees with that view. If, however, *Howell* stands for the view that a defendant is required under SORNA to notify the authorities of the state that he is departing of his residency change, this Court does not find *Howell* persuasive. This is particularly true if *Howell* stands for the proposition that an offender has a duty under SORNA to notify the state of departure *before* he has left. Under SORNA, an offender who has previously registered and has a change in residency, must notify the jurisdiction in person in which he resides (or attends school or is an employee) within three business days of the residency *change*. If one has not yet moved, there cannot be a change in residency and there is no obligation under SORNA to notify anyone.

The infirmities in the Eighth Circuit's analysis in *Howell* were later identified by that same Circuit in *United States v. Lunsford*, 725 F.3d 859 (8th Cir. 2013), a case not cited by the United States in its February 4, 2014, memorandum. *Lunsford* explicitly rejects the proposition that the Government in this case says *Howell* stands for. Lunsford fled Kansas, the state where he had registered as a sex offender, and moved to the Philippines. He did not notify Kansas authorities of his change of residence. Several months later, Lunsford was arrested in the Philippines, deported,

and was charged in Kansas with a violation of SORNA. Because SORNA's definition of "jurisdiction" excludes foreign countries, Lunsford was not required under SORNA to register in the Philippines. Lunsford moved to dismiss the indictment on the grounds that SORNA did not require him to update his registration in Kansas after he left the state. The Government advanced several arguments in support of its theory that Lunsford was required to notify Kansas of his residency change. One of those arguments relied on the Eighth Circuit's precedent in *Howell*.

The court in *Lunsford*, however, stated, that *Howell* "did not rule on whether a registered sex offender may be liable for failing to update his registration in a jurisdiction from which he has departed, but rather addressed venue for a prosecution under SORNA." 725 F.3d at 863. The court stated:

> It is true that the *Howell* opinion—after explaining that venue was proper in Iowa because the SORNA violation "commenced" there—added that the offender was "required by law" to notify the Iowa sex offender registry of his move to Texas, and that his failure to notify the Iowa registry "was a material part of the § 2250 violation." It was undisputed, however, that the offender failed to register in Texas, so a determination whether SORNA required him to update the registry in Iowa was not necessary to a conviction or to the court's decision on venue. The parties did not brief that question, and the court did not address the point after adversarial presentation. Under the circumstances, the court's comment that the offender was "required by law" to update the Iowa registry after moving to Texas was dicta that is not binding in a future case such as this one that squarely raises the issue under the federal statute.

*Id.* at 864.

Contrary to the United States' reliance on *Howell*, the Eighth Circuit has explicitly rejected the proposition that a defendant has a duty to notify a jurisdiction where he was registered and in which he resided prior to his relocation to a new jurisdiction.

*3. United States v. Thompson*

The second of the two authorities the Government tenders is a 2009 opinion from the

District of Maine, *United States v. Thompson*, 595 F. Supp. 2d 143 (D. Me. 2009). As with its citation to *Howell*, the Government does not offer any analysis of this decision. Like Mr. Bailey, Mr. Howell, and Mr. Lunsford, Thompson initially registered in the state of his residence, Maine, and then subsequently relocated to another state, New Mexico. The Government's theory was that Thompson failed to update his Maine registration and register in New Mexico. 595 F. Supp. 2d at 149. The district court, after examining § 3237(a), held that, because the defendant "is charged with traveling in interstate commerce, then failing to register in New Mexico and update his registration in Maine, venue is proper in both Maine and New Mexico." *Id.*

The *Thompson* court then cited several opinions, including *Howell*, where the prosecution of a SORNA case was brought in the jurisdiction where the offender was previously registered. The court examined one of these cases closely, *United States v. Roberts*, No. 6:07-cr-70031, 2007 WL 2155750 (W.D. Va. July 27, 2007) (Moon, J.), *overruled on other grounds by United States v. Hatcher*, 560 F.3d 222 (4th Cir. 2009)). In *Roberts*, the defendant registered as a sex offender in Virginia, but later moved to North Carolina and did not notify the authorities in either state of his change of residence. Roberts argued that the proper venue for his prosecution was in North Carolina. The Government contended that Roberts was "supposed to have notified both" North Carolina and Virginia and, as such, Roberts' failure to register or update occurred in both places. Judge Moon then wrote:

> The government's position may be accurate as a matter of state law, but SORNA only requires that an offender "appear in person in at least one jurisdiction involved pursuant to subsection (a)" to change the registration. 42 U.S.C. § 16913(c). "At least one" cannot plausibly be read as "both." Thus there was no SORNA requirement to register in both jurisdictions.

*Id.* at *3.

Thereafter, Judge Moon addressed the Government's alternative argument, namely, that under § 3237, venue is proper in any district through which the defendant passed during his interstate travels. Judge Moon rejected this argument finding that a SORNA violation is not "committed" until three days after an offender moves to a new jurisdiction and fails to update his registration. As such, Judge Moon found that a SORNA violation could not be construed as a "continuing" offense because no crime is committed during the actual travel.

Nonetheless, Judge Moon *did* hold that Virginia was a proper venue for Roberts' prosecution. The court reasoned that Virginia was a "jurisdiction involved" within the meaning of 42 U.S.C. § 16913(a). He noted that § 16913(a) requires registration in any district where the defendant resides, works, or goes to school. The court stated,

> Virginia was at one time a jurisdiction of residency for the Defendant. Due to his failure to re-register, it remained his nominal residence according to the sex offender registries. Because of these two factors, I find that Virginia was "involved" in the sense used by SORNA. Therefore, prosecution in Virginia satisfies the venue requirements.

Because the United States did not examine—or even discuss—the *Roberts* case, the Court is left to guess whether the United States adopts Judge Moon's alternative basis for finding venue, that is, the concept of a SORNA defendant having a "nominal residence".

The Court, respectfully, is skeptical of Judge Moon's "nominal residence" analysis because it appears to be at odds with the plain language of § 16913(a). Congress did not speak of "nominal" residences when it drafted § 16913. Moreover, SORNA defines the word "resides" as follows: "The term 'resides' means, with respect to an individual, the location of the individual's home or other place where the individual habitually lives." 42 U.S.C. § 16911(13). Congress used the *present* tense, not the past tense, of the verb "reside". If Congress had intended for a sex

offender to have a duty under SORNA to update the state from which he moved of his change in residence Congress could have easily done so by using the *past* tense of the verb in § 16913(a). That is, the offender, in keeping his registration current, could have been required to appear in person in the jurisdiction where he previously resided. That is not what Congress did.

*4. Department of Justice National SORNA Guidelines*

The Court is aware that the Government's misconception that a defendant is required under SORNA to notify his former state of a change in residence was likely not pulled out of thin air. The National Guidelines for Sex Offender Registration and Notification, which provide guidance to States about SORNA, provide that "each jurisdiction in which a sex offender is registered as a resident must: Require the sex offender to inform the jurisdiction if the sex offender intends to commence residence, employment, or school attendance in another jurisdiction." 73 Fed. Reg. 38030–01, 38065 (July 2, 2008).

The National Guidelines, however, are just that—guidelines. They are not Acts of Congress. They are guidelines issued by the Executive Branch of the Government. As discussed, nothing in the SORNA statute requires the Defendant in this case to have notified West Virginia of his residency change after he left the state. West Virginia law may—or as Defendant contends—may not require that he had to contact West Virginia authorities when he changed residences. West Virginia law, however, is irrelevant to this analysis. If Congress intended a SORNA offender to have to notify a state in which he was previously registered that he had relocated to another state, Congress could have easily said as much in § 16913(a) or (c). It did not. Courts are not in the business of writing legislation, but rather applying the plain language of legislation.

*B. The Court's Ruling*

The Court has previously ruled that venue in the Southern District of West Virginia is proper because this is the jurisdiction where the SORNA violation commenced, that is, where the Defendant moved out across state lines into Ohio. This ruling stands and venue is proper under 18 U.S.C. § 3237 in the Southern District of West Virginia on this basis. For the foregoing reasons, the Court rejects the Government's contention that Defendant's criminal culpability includes a duty to notify West Virginia of his change in residence after he relocated to Columbus, Ohio.

*C. Where We Go from Here*

Several problems persist. If the sole theory that the grand jury returned the indictment on was that Defendant committed a SORNA violation by failing to notify West Virginia authorities of his residency change, then the grand jury returned an indictment for something that is not a crime. Motions challenging an indictment's failure to state an offense may be brought at any time. Fed. R. Crim. P. 12(b)(3)(B). If, however, the grand jury's indictment was predicated in part on Defendant's failure to notify Ohio authorities, the indictment is valid, albeit poorly drawn. The remedy in that instance would be to construe the indictment solely as charging a violation based on Defendant's failure to notify Ohio authorities and ignore any surplusage, if any, in the indictment referencing Defendant's duty to notify West Virginia authorities.

Absent an agreed and *clearly* articulated factual basis about what specific conduct forms the basis of the indictment and Defendant's guilty plea, the Court will not be able to find on this record that a factual basis to support Defendant's guilty plea exists. Even if the parties were to do so, questions remain about whether the present indictment can serve as a proper charging

instrument, even with Defendant's waiver of defects. Without deciding the question, the Court observes that striking certain factual allegations in paragraph 5 of the indictment potentially could cure certain defects in the indictment. Even assuming that to be true, in order for the Court to ensure that Defendant's guilty plea was knowing and intelligently made, Defendant would need to be able to convince the Court that in entering his guilty plea he understood that the indictment charged a violation of SORNA based on his failure to keep his registration current by notifying Ohio authorities in person within three days of his relocation to Columbus. There are other avenues that might be pursued.

*III. CONCLUSION*

The Court **DIRECTS** counsel to file briefing, either jointly or separately, on or before **3:00 p.m., February 11, 2014,** setting forth the parties' positions in light of the Court's ruling.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: February 10, 2014

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE